[Civil No. 2389. Filed November 6, 1925.]

[240 Pac. 349.]

ROBERT HEGI, MAX ROTHPLATZ, W. J. BAILEY and E. S. BETTLER, Appellants, v. CARRICK & MANGHAM, AGUA FRIA LANDS AND IRRIGATION CO., a Corporation, ROOSEVELT IRRIGATION DISTRICT, a Corporation, C. RODNEY MacDONALD, W. S. STEVENS, S. CARL MILLER, Directors of ROOSEVELT IRRIGATION DISTRICT, W. J. BURNS, G. C. RUBLE and T. J. ROBERTS, Appellees.

WATERS AND WATERCOURSES—IRRIGATION DISTRICT NOT ENJOINED FROM MAKING CONTRACT FOR PURCHASE OF PROPERTY FROM IRRIGATION COMPANY WITHIN SCOPE OF AUTHORITY.—Irrigation district will not be enjoined from making a new contract to purchase property from an irrigation company within scope of its authority under Laws of 1921, chapter 149, merely because under another contract, in no way binding on district, and to which it was not a party, some unauthorized parties had agreed to use their influence to have district accept terms of new contract.

---

See (1) 40 **Cyc.**, p. 821 (Anno.).

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Mr. John W. Ray, for Appellants.

Messrs. Alexander & Christy and Mr. Hess Seaman, for Appellees.

LOCKWOOD, J.—In August, 1921, Carrick & Mangham Agua Fria Lands & Irrigation Company, a corporation, hereinafter called the Company, entered into a contract with the Salt River Valley Water Users' Association, hereinafter called the Association, by the terms of which the latter agreed to sell to the former certain electrical power and waste water, subject to the approval of the Secretary of the Interior. In April, 1923, the Company and W. J. Burns, G. C. Ruble, and T. J. Roberts, representing the owners of certain lands susceptible of irrigation by the waste water aforesaid, hereinafter called the Committee, entered into a contract.

This contract, after reciting that the Committee had petitioned to form an irrigation district under the laws of Arizona, which included in its proposed boundaries some 20,000 acres of land controlled by the Company, that the waste water referred to in the contract between the Company and the Association was the best means of irrigating the lands within the district, and that the Company had spent much effort and money in securing maps and data valuable to the proposed district, and was willing under certain conditions that its lands should be included therein, provided substantially as follows:

First, the Company would not oppose the inclusion of its lands in the proposed district. Second, the

Company would transfer to the district, and the latter would purchase from the Company its rights in the contract with the Association, together with all its maps, data, etc., for the sum of $155,000. Third, the Committee would transfer to the district certain data and plans in its possession for which the district agreed to pay $7,500. Fourth, the parties would use their best endeavors to bring it about that certain named persons should be chosen as the first directors of the district. Fifth, an engineer for the district should be selected by it to be approved by the Company and the Committee, or in case of their disagreement, by the superintendent of the Association. Sixth, no attorney not acceptable to the Association should be employed by the district. There are other provisions of the contract, but these are all that are material to the consideration of this case.

It was signed by the members of the Committee, the Company, and some fifty or sixty landholders in the proposed district, which last had not yet become a legal entity. Thereafter the district was organized according to law under the name of the Roosevelt Irrigation District, and two of the three men proposed in the contract were selected to be members of its board of directors, and the Company, with the approval of the Secretary of the Interior, transferred its contract with the Association to the district. Thereafter plaintiffs herein, two of whom were and two of whom were not signers of the contract above described, brought this action, making parties defendant the Company, the district in its corporate capacity, the directors thereof, and the members of the Committee.

The complaint set up the foregoing facts, and alleged that the three directors were about to enter into a contract to pay the Company the sum of $155,000 and the members of the Committee the sum of $7,500

as set forth in the contract above referred to, and that they were about to choose an engineer and an attorney, and would in compliance with the contract submit their choice to the Association or its officers. The complaint alleged further that various and sundry of the provisions of the contract were void as against public policy, and the prayer for relief was that the contract be declared void and not binding on the signers, or the district, and that the district and its directors be enjoined from ratifying the contract or making any contract binding the district to pay any sum in furtherance thereof. Defendants filed a general and several special demurrers, all of which were sustained by the trial court, and, plaintiffs electing to stand on their complaint, judgment was rendered for defendants; whereupon this appeal was taken.

It is apparent that the contract set up was of absolutely no binding force or effect upon the district. At the time it was made the district did not exist, let alone have officers legally authorized to act for it, and if this were an action by any of the signers of the contract to compel the district to act thereunder, it would inevitably fail for such reasons. The allegations of the complaint, however, are in substance that after the organization of the district, and after its board of directors was chosen, they on looking over the terms of the contract, have decided that they would buy the property mentioned for the price set forth therein. There is no allegation in the complaint of any facts which would show that it was not highly to the benefit of the district to purchase the rights which the Company had acquired under its contract with the Water Users' Association, or that the plans and data secured by the Committee were not well worth the price, and since the passage of

chapter 149, Session Laws of 1921, such purchase was within the power of the board.

It is not alleged anywhere in the complaint that the district has contracted or is about to contract to do any of the alleged illegal things set up in the complaint. It does state that the directors "will submit their will and choice to others" when it comes to choosing an attorney and an engineer. But there is no allegation of compulsion or contract to do so. It is apparent that these "others" cannot themselves choose such employees, and if the board, in the exercise of its untrammeled discretion, happens to choose persons approved also by other parties, that is its privilege. Stronger allegations of fact than those of the complaint are required before we will interfere in advance with the action of the board in choosing its own employees.

We have, then, in effect, an effort to enjoin the district from making what is as a matter of law a new contract well within the scope of its authority, merely because under another contract, in no way binding on the district, and to which it was not a party, some unauthorized parties had agreed to use their influence to have the district accept these terms. The particular features of the original contract which it is claimed are illegal are that the Company would not oppose the inclusion of its lands within the district, that the Committee was acting for the district and itself in antagonistic positions, that the signers would endeavor to secure the election of certain specified directors, and that they would also see that the engineer and attorney to be chosen should be selected under certain specified limitations. It will be observed, however, that two of the things objected to have been executed so far as they can be, and that the other two obviously are not carried forward into the proposed new contract.

The general legal principle involved may therefore be succinctly stated as follows: A. and B. enter into a contract to the effect that they and C., who is not a party thereto, will do several things, some of which are against public policy. Later C. contracts or is about to contract with A. and B. to do the things not prohibited, the illegal acts either having been already performed by A. and B. without C.'s aid, or else being omitted from the later agreement. Will an injunction lie against the making or the performance of this last contract by C. because part of the first one was illegal?

The question thus stated answers itself, and the trial court rightly sustained the general demurrer.

So far as the other defendants are concerned, it is not alleged that they are attempting to do anything. The complaint does not set up a cause of action against any of the defendants herein, and the judgment of the lower court is therefore affirmed.

McALISTER, C. J., and ROSS, J., concur.